UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
THIRD DIVISION

| | | |
|---|---|---|
| St. Paul Motorsports, Inc., | ) | |
| d/b/a St. Paul Harley-Davidson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 11-cv-03229 (PJS-TNL) |
| Harley-Davidson Motor Company, Inc., | ) | |
| d/b/a Harley-Davidson Motor Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS OR TRANSFER VENUE**

Defendant Harley-Davidson Motor Company, Inc. ("HDMC") respectfully

requests that this action be dismissed on the ground that this Court lacks subject matter

jurisdiction because the plaintiff's claims for damages are not ripe.  Alternatively, in the

interests of federal comity and adherence to the "first-filed rule," the Court should refrain

from permitting any further proceedings in this Court and either dismiss this case or

transfer it to the Eastern District of Wisconsin, where a case between these same parties

and involving the same policies is already pending.  Finally, if not dismissed or

transferred under the "first-filed rule," this case should be transferred to the Eastern

District of Wisconsin pursuant to 28 U.S.C § 1404(a) for the convenience of the parties and the witnesses and in the interests of justice.[1]

## Background

HDMC is a Wisconsin corporation based in Milwaukee, Wisconsin. (Compl. ¶ 2)  HDMC markets Harley-Davidson® motorcycles, motorcycle parts, motorcycle accessories, and general merchandise, including clothing and related products, through a network of authorized dealers who operate in designated local territories pursuant to dealer contracts.  (Kennedy Decl. ¶ 6)  HDMC licenses the various Harley-Davidson trademarks used in connection with the distribution and sale of these Harley-Davidson® products from H-D Michigan, LLC, the exclusive owner of the Harley-Davidson trademarks used by HDMC.  (*Id*., ¶ 3)  HDMC sublicenses the trademarks to its authorized dealers as part of its dealer contracts for use in connection with dealership products and services.  (*Id*.)

St. Paul Motorsports, Inc. d/b/a St. Paul Harley-Davidson ("St. Paul"), is a Minnesota corporation based in St. Paul, Minnesota.  (Compl. ¶ 1)  St. Paul is engaged in the business of selling Harley-Davidson® motorcycles and products to retail consumers pursuant to the terms of the Motorcycle Dealer Contract between HDMC and St. Paul. (Compl. ¶ 1; Giannetti Aff. [Dkt. No. 10-2], Ex. A)

---

[1] HDMC respectfully notes that resolution of this motion could obviate the need for the Court to determine the plaintiff's motion for a temporary restraining order and preliminary injunction, on which HDMC will be submitting a separate response memorandum.

In February 2011, HDMC announced a revision to its Non-Retail Sales Policy for Genuine Motor Parts, Genuine Motor Accessories, and MotorClothes® (PAM) Products and the creation of its Third Party Internet Sales Policy for Genuine Motor Parts, Genuine Motor Accessories, and MotorClothes® (PAM) Products (collectively the "Policies").[2]  (Compl., ¶ 8; Giannetti Aff., Ex. C)  The Non-Retail Sales Policy for PAM was revised to clarify that, consistent with the restrictions on the sale of motorcycles, sales of PAM to customers located outside of the United States (other than customers on military duty) are prohibited.  That aspect of the policy became effective August 1, 2011. (Giannetti Aff., Ex. C)  The Third Party Internet Sales Policy, which does not become effective until January 1, 2012, prohibits the advertising and sale of PAM via third party websites, such as Amazon and Ebay.  (Giannetti Aff., Ex. C)  A clarification to the Third Party Internet Sales Policy is scheduled to be issued by the end of November 2011 to remove the prohibition on dealers placing links to their websites on third party websites. (Kennedy Decl. ¶ 26)

The Policies, in addition to ensuring consistency with the rules concerning sales of Harley-Davidson® motorcycles, were adopted because of HDMC's concerns that

---

[2] "PAM" refers to genuine Harley-Davidson motorcycle parts, accessories and MotorClothes® products, collectively, as sold by Harley-Davidson to its authorized dealers.  MotorClothes® and the MotorClothes logo are registered trademarks of Harley-Davidson and are used in connection with a wide range of general merchandise, including apparel, accessories, gifts and collectibles (including glassware, key chains, photo frames, coolers, clocks, bags and luggage, bottle openers, signs, desk accessories, gift wrap, banks, belts and buckles, helmets, hats and caps, wallets, gloves, goggles, lanyards, rainwear and jewelry.  (Kennedy Decl. ¶ 11)

such sales (a) dilute its dealers' required, primary focus on sales of motorcycles to customers located in their local geographic territories, (b) are detrimental to Harley-Davidson's brand reputation and marks and the unique customer experience that is a hallmark of Harley-Davidson, (c) put international Harley-Davidson dealers at a competitive disadvantage in their own territories, and (d) may cause potentially unsafe and/or unlawful conditions in foreign countries into which products are sold by U.S. dealers because products designed for sale in the U.S. are not necessarily designed to comply with other countries' laws and customs.  (*Id.*, ¶¶ 10, 12-13, 15, 22-24)

On March 17, 2011, St. Paul brought an action in the Wisconsin Division of Hearings and Appeals challenging HDMC's ability to enforce the Policies under Wisconsin's Motor Vehicle Dealer Law, Wis. Stat. ch. 218.  (*See* Kramer Aff. [Dkt. No. 10-1] Ex A)  Under Wis. Stat. § 218.0116(8)(a), enforcement of the Policies is stayed until a final determination of St. Paul's protest.  Thus, as a result of the pending administrative proceeding, as well as the fact that the Third Party Internet Sales Policy does not become effective until January 1, 2012, the Policies have not been enforced against St. Paul and St. Paul has not been limited in its sales of PAM products internationally or through third party websites.  In fact, the opposite is true.  Because all other U.S. Harley-Davidson dealers have been subject to the Non-Retail Sales Policy for PAM since August 1, 2011, St. Paul has likely reaped the benefit of additional sales to international customers who previously purchased from other dealers that are now prohibited from making those sales.  (*See* Kennedy Decl. ¶¶ 18-19)  Thus, St. Paul has

actually benefitted from the fact that it is the sole U.S. dealer who has not had to comply with the policy.  (*See id*.)

Not surprisingly, the fact that St. Paul has continued to sell internationally since August 1, while HDMC's other U.S. dealers have ceased doing so, has caused a number of those dealers to complain about the unfairness of the situation.  (*Id*., ¶ 20) These complaints have caused HDMC reasonably to be concerned about additional lawsuits, in varying jurisdictions, and the potential for conflicting decisions on the enforceability of the Policies that could result.  Given the nature of the internet, the Policies must be enforced uniformly against all U.S. dealers in order to be effective. Thus, on October 27, 2011, HDMC filed an action against St. Paul in the United States District Court for the Eastern District of Wisconsin seeking, among other things, a ruling that, under the Lanham Act (15 U.S.C. §§ 1051, *et seq.)* and the Commerce Clause of the United States Constitution, enforcement of the Policies may not be limited by individual states' motor vehicle dealer laws, including those of Wisconsin and Minnesota.  (*See* Crawford Decl., Ex. A)  St. Paul was served with that complaint on October 31, 2011. (Crawford Decl. ¶ 2)

Also on October 31, 2011, St. Paul commenced this action seeking injunctive relief against and damages allegedly arising from HDMC's enforcement of the

Policies.  A hearing on St. Paul's motion for a temporary restraining order has been scheduled for November 18, 2011.[3]

## Discussion

I.  **This Court Lacks Subject Matter Jurisdiction Because St. Paul's Claims for Damages Are Not Yet Ripe.**

"Article III of the United States Constitution restricts Federal Courts to the adjudication of actual 'cases' and 'controversies.'  The principle of 'ripeness' is among several doctrines — such as mootness, standing, and the involvement of a political question — which have developed to inform and define the 'case or controversy' requirement."  *Minn. Sch. Bd. Ass'n Ins. Trust v. U.S. E.E.O.C.*, 184 F. Supp. 2d 899, 905 (D. Minn. 2001).  The rationale for requiring a claim to be ripe before the court becomes involved is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Id.*  Thus, there must be a "'a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'"  *Id.*

Courts consider two factors when determining whether a claim is ripe for adjudication, (1) the fitness of the issues for judicial resolution, and (2) the hardship to

---

[3] HDMC was served with St. Paul's complaint and motion papers for a temporary restraining order and preliminary injunction on October 31 prior to the case being filed in the Ramsey County District Court.  HDMC removed this matter to the District Court for the District of Minnesota.  (Crawford Decl. ¶ 3)  St. Paul then re-filed its motion papers in this Court, and the Court set the November 18 date for the hearing.

the parties of withholding court consideration.  *Neb. Publ. Power Dist. v. MidAmerican Energy Co.,* 234 F.3d 1032, 1037 (8th Cir. 2000).

> For the first factor:
>
> The "fitness for judicial decision" inquiry goes to a court's ability to visit an issue. In appeals from administrative regulation, the fitness prong questions finality and exhaustion. More generally, however, it safeguards against judicial review of hypothetical or speculative disagreements.

*Id*. at 1038 (citation omitted).  For the second factor, courts examine whether review may be delayed without resulting in significant harm.  *Id*.

An examination of these factors demonstrates that St. Paul's claims are not ripe for adjudication because, quite simply, the policies St. Paul seeks to enjoin are not being enforced against St. Paul, so there is nothing to enjoin and no damages accruing. As such, St. Paul's claim for injunctive relief is premature and unwarranted.

St. Paul has not suffered any harm as a result of HDMC's implementation of the Policies.  Indeed, St. Paul's complaint makes this clear:  the Policies, "<u>if implemented</u>, would constitute…"; "SPHD <u>will suffer</u> damages…"; "These changes <u>would deprive</u> SPHD…".  Compl. ¶¶ 9, 16, 25 (emphasis added).  St. Paul is not seeking, and cannot possibly seek, redress for any actual harm caused by HDMC because, to date, there has been no harm.  In fact, St. Paul has benefitted from the implementation of the Non-Retail Sales Policy for PAM as it has gained the ability to make sales at the expense of dealers who have complied with the Policy.

Nor is St. Paul in immediate danger of suffering such damages.  Because of the Wisconsin administrative proceeding, enforcement of the Policies against St. Paul has

been stayed as a matter of law.  *See* Wis. Stat. § 218.0116(8)(a) ("The proposed modification may not take effect pending the determination of the matter.").  A Proposed Decision dismissing that matter has been issued, but is not yet final.  (Docket #1-8 – Kramer Aff., Ex. A)  Comments on that decision were due from the parties to the Division on November 7, 2011.  (*See id*.)  Not until sometime after that will a Final Decision be issued, which is then subject to appeal.  Until that proceeding has concluded, Harley-Davidson may not enforce its policies against St. Paul.

Further, St. Paul's motion glosses over the fact that one of the policies it seeks to enjoin, the Third Party Internet Sales Policy, does not even become effective until January 2012.  (*See* Kennedy Decl. ¶ 25)  More to the point, the Third Party Internet Sales Policy is undergoing revisions prior to its implementation, which change the nature of any alleged damages that could, hypothetically, be suffered by St. Paul once it is enforced by HDMC.  In the coming weeks, HDMC will be notifying its dealers that the prohibition on dealers placing links to their websites on third party sites will be eliminated; only sales or offers to sell on those sites will be prohibited effective January 1, 2012.  (Kennedy Decl. ¶ 26)  This change is particularly relevant here, since the ability to advertise on Amazon and eBay is a primary complaint of St. Paul's regarding the Policies (Compl. ¶¶ 5, 9), and that ability will no longer affected by the Policies.

In short, St. Paul's complaint is premature and should be dismissed because no actual case or controversy is ripe for determination.  St. Paul has suffered no harm whatsoever, and accordingly, its claims for damages and injunctive relief are based only on supposition as to what might occur.  St. Paul has not requested declaratory guidance as

to its rights with respect to the Policies, but has instead styled its complaint as one for damages and injunctive relief based on purported harm allegedly caused by Policies that have not yet even been enforced against St. Paul.  Article III confers jurisdiction upon federal courts for actual controversies that are not abstract or theoretical.  At this point, St. Paul's claims are only abstractions and theories.  This Court lacks subject matter jurisdiction, and the case should be dismissed.

II.   **If This Action is Not Dismissed for Lack of Subject Matter Jurisdiction, the First-Filed Rule Gives Priority to HDMC's Action in the Eastern District of Wisconsin.**

    A.   **HDMC's Action in the Eastern District of Wisconsin Has Priority Under the First-Filed Rule.**

It is well established that in situations of parallel litigation in different districts, "the first court in which jurisdiction attaches has priority to consider the case." *Imation Corp. v. E.I. DuPont De Nemours & Co.*, No. 97-2475, 1998 U.S. Dist. LEXIS 16859 at *6 (D. Minn., Apr. 21, 1998).  This rule avoids the "unnecessary expenditure of scarce judicial resources," which duplicative litigation in both districts would cause. *Slidell, Inc. v. Archer Daniels Midland Co.*, No. 02-4841, 2003 U.S. Dist. LEXIS 15310 at *10 (D. Minn. Sept. 2, 2003); *Northwest Airlines, Inc. v. Am. Airlines, Inc.*, 989 F. 2d 1002, 1006 (8th Cir. 1993).  The rule also avoids the potential for conflicting rulings as to the same disputed issues. *Imation*, 1998 U.S. Dist. LEXIS 16859, at *6; *Northwest Airlines*, 989 F. 2d at 1006.  Therefore, pursuant to the first-filed rule, a district court has the discretion to either dismiss the later-filed action or transfer it to the venue where the parallel action had been earlier initiated. *Slidell*, 2003 U.S. Dist. LEXIS 15310 at *10.

The filing of a complaint, as opposed to service of it, is the operative event that establishes priority for purposes of the first-filed rule. *Slidell*, 2003 U.S. Dist. LEXIS 15310 at *13. It cannot be disputed that HDMC filed its complaint in the Eastern District of Wisconsin prior to St. Paul filing its complaint in Minnesota state court. (*See* Crawford Decl. ¶¶ 2, 3) Accordingly, HDMC's action "is entitled to primacy" and the proceedings before this court should be dismissed or transferred to the Eastern District of Wisconsin. *See Slidell*, 2003 U.S. Dist. LEXIS 15310 at *13-14.

Dismissal or transfer is all the more appropriate here because the factual and legal issues and the parties in both actions are substantially identical. *See Imation*, 1998 U.S. Dist. LEXIS 16859 at *7; *see also Slidell*, 2003 U.S. Dist. LEXIS 15310 at *11. HDMC, along with Harley-Davidson® trademark owner H-D Michigan LLC, has sought declaratory judgment that HDMC's proposed Policies are valid and enforceable. (*See* Crawford Decl., Ex. A) St. Paul has asserted claims that these same Policies, which have not yet been enforced or implemented as to St. Paul, are likely to cause damage to St. Paul's business. (*See generally* Compl.) In order for St. Paul to succeed on its complaint, it would have to disprove the validity and enforceability of the proposed Policies, which is exactly what HDMC needs to prove in order to succeed on its complaint. The identity of the issues presented militates in favor of application of the filed-first rule. *See Imation*, 1998 U.S. Dist. LEXIS 16859, at *7; *Slidell*, 2003 U.S. Dist. LEXIS 15310 at *11. Moreover, the fact that the same parties are involved (but their party-designations are reversed) in the two actions further favors application of the filed-first rule. *See Imation*, 1998 U.S. Dist. LEXIS 16859 at *7; *Slidell*, 2003 U.S. Dist.

LEXIS 15310 at *11.  The substantial identity of the issues and the parties are key factors

relating to the rationales that support the first-filed rule — the importance of avoiding

inconsistent rulings regarding the same issues and avoiding duplicative judicial

proceedings is quite apparent when the parties and issues in parallel cases are the same.

*See Slidell*, 2003 U.S. Dist. LEXIS 15310 at *10-11; *see also Imation*, 1998 U.S. Dist.

LEXIS 16859 at *6.

       Moreover, because HDMC's claims and St. Paul's claims both arise out of

the same transaction or occurrence, St. Paul's claims are compulsory counterclaims that

must be pled in its answer to HDMC's complaint in the Eastern District of Wisconsin.

Fed. R. Civ. Proc. 13(a).  "Federal courts will not permit an action to be maintained

where the claims asserted should have been brought as a compulsory counterclaim in an

earlier action."  *In re Crown Vantage, Inc*., 421 F.3d 963, 973 n. 7 (9th Cir. 2005)

Because St. Paul's claims must be pled as counterclaims in the Eastern District of

Wisconsin case (the first-filed action), it makes no sense for those same claims to move

forward in the District of Minnesota (as the second-filed action).  Such a situation is

exactly what the first-filed rule is designed to prevent — the waste of judicial resources

and the risk of conflicting decisions in duplicative litigation in multiple jurisdictions.  *See*

*Northwest Airlines*, 989 F. 2d at 1006.  To avoid those problems, preference is given to

the suit that is filed first — here, HDMC's action.

       Thus, the well-established first-filed rule clearly indicates that HDMC's

action has priority and that the Eastern District of Wisconsin is the appropriate venue for

the parties to litigate their dispute.  Accordingly, the Court should dismiss St. Paul's

complaint, or transfer this action to the Eastern District of Wisconsin.

> **B.      No Compelling Circumstances Exist Which Would Warrant a
> Departure from the First-Filed Rule.**

The first-filed rule applies, as it does here, so long as there are not

"compelling circumstances" that counsel against the rule's application.  *Northwest*

*Airlines*, 989 F.2d at 1006.  Courts in the Eighth Circuit have found "compelling

circumstances" to refuse to apply the first-filed rule in primarily two situations — when

the party that files first seeks only a declaratory judgment while the second-filing party

seeks actual damages or injunctive relief, and when the party that files first is on notice

that the second-filing party is about to file suit.  *Id.* at 1007.  Neither exception applies

here

> **1.      The Relief Sought by *Both* HDMC's and St. Paul's Respective
> Complaints is Declaratory in Nature.**

While it is true that HDMC's complaint is one for declaratory judgment, St.

Paul's complaint is not even ripe for adjudication since no harm has occurred that could

result in potential damages or the need for injunctive relief.  *See*, *supra*, Section I.  The

Policies that St. Paul complains about have not yet been enforced against St. Paul, and

cannot be until the complete resolution of an administrative proceeding in Wisconsin that

was initiated by St. Paul (*see* Wis. Stat. § 218.0116(8)(a)).  And regardless of when that

administrative proceeding is concluded, one of the Policies will not apply to any dealer

until January 1, 2012.  (Kennedy Decl. ¶ 25)  Thus, St. Paul has not suffered any harm as

a result of these Policies.  Indeed, St. Paul's complaint makes this clear:  the Policies, "<u>if</u>

implemented, would constitute…"; "SPHD will suffer damages…"; "These changes would deprive SPHD…".  Compl. ¶¶ 9, 16, 25 (emphasis added).  St. Paul is not seeking, and cannot possibly seek, redress for any actual harm caused by HDMC, because to date, there has been no harm.  Thus, although styled as a complaint for damages, what St. Paul is really seeking is a declaration that HDMC's proposed Policies are invalid and unenforceable so that the Policies never reach implementation — the exact opposite of the declaratory pronouncement that HDMC is seeking in the Eastern District of Wisconsin.

Why does this matter?  Because the concerns associated with this exception to the first-filed rule are that a declaratory-judgment action may be more indicative of a preemptive strike by the first-filing party than would a suit for damages or injunctive relief.  *Northwest Airlines*, 989 F.2d at 1007.  That is, courts are reluctant to give preference to a first-filed suit when the second-filing plaintiff is the "true plaintiff" in the parties' dispute.  *See id*.  Such concerns simply are not present here.  The filing of HDMC's complaint for declaratory judgment was not a preemptive strike.  Rather, HDMC determined that it needed a pronouncement on the enforceability of its Policies, because of the importance of these Policies to the protection and enhancement of its brand and its relationships with its customers, and because of the need to uniformly enforce the Policies nationwide.  At worst, since St. Paul is in actuality seeking a pronouncement of the unenforceability of those same Policies before they are even applied to it, St. Paul is the party belatedly attempting a preemptive strike.  HDMC filed first; its case should be given priority, and in light of the true declaratory nature of St.

13

Paul's action, the declaratory nature of HDMC's action does nothing to counsel against application of the first-filed rule.

> ### 2. HDMC's Filing was Not Prompted by Some Race to the Courthouse After Receiving a Definitive Indication that St. Paul Intended to Sue.

The other "compelling circumstance" commonly identified by courts in the Eighth Circuit as an exception to the first-filed rule is when the first-filing plaintiff is on notice that the second-filer intends to imminently file suit. *Northwest. Airlines*, 989 F.2d at 1007. This exception is rooted in the concern that courts do not want to favor, by application of the first-filed rule, a plaintiff that merely was the party that won a race to the courthouse. *See id*. As stated above, it cannot be disputed that HDMC filed first, or that the filing of the respective complaints occurred four calendar days apart. (Crawford Decl. ¶¶ 2, 3) However, in this case, the temporal closeness of the filings is merely coincidental and is not at all indicative of a race to the courthouse by the parties.

St. Paul had an opportunity to file an action, like the one before this Court, when the Policies were first announced by HDMC. Instead, it chose to file an administrative complaint in Wisconsin against HDMC on March 17, 2011, seeking a declaration that the Policies are not enforceable under the Wisconsin motor vehicle dealer law. (*See* Kramer Aff. Ex A) By filing that action, St. Paul received the immediate benefit of an automatic stay precluding enforcement of the Policies against it. That stay remains in place until a final determination of St. Paul's administrative challenge. A proposed decision was rendered in that action on October 21, 2011 (*id.*), and until that

proposed decision is adopted as final, HDMC is precluded from enforcing its proposed policies against St. Paul pursuant to Wisconsin law.  Wis. Stat. § 218.0116(8)(a).

With implementation of the proposed Policies stayed for some indefinite period of time, HDMC was not required to wait for St. Paul to file serial lawsuits, until it got the result it wanted, before seeking a definitive ruling on the enforceability of the Policies in Minnesota, Wisconsin and, indeed, across the United States.  HDMC has a right and duty under federal law to protect its trademarks and, similarly has a right and duty to ensure that Harley-Davidson® products are sold and marketed in a way that enhances the value of its trademarks and the customer experience for the benefit of all of its dealers worldwide.  Thus, HDMC was compelled by sound business judgment to file its own suit, seeking declaratory guidance on its Policies on grounds that go well beyond what could have been addressed in the pending administrative proceeding.  HDMC is a thus "true plaintiff," and there was no race to the courthouse.

Moreover, just as the court in *Northwest Airlines* found that this potential exception to the first-filed rule was not a "compelling circumstance" in that case, since the first-filer's declaratory-judgment action there was sought due to certain adverse effects being suffered by that plaintiff, *see Northwest Airlines*, 989 F.2d at 1007, so too HDMC is suffering adverse effects that make its declaratory judgment action anything but a mere effort to preempt a suit by St. Paul.  All of HDMC's U.S. dealers other than St. Paul are already subject to the updated Non-Retail Sales Policy for PAM, and are no longer permitted to sell PAM to customers located outside of the United States.  A number of those dealers, like St. Paul, historically derived revenues from such sales.  Not

15

surprisingly, then, those dealers are very unhappy that while they are precluded from selling internationally, St. Paul has not only continued to do so, but likely is also making sales that otherwise would have been made by those dealers. The unfairness felt by these dealers will only grow as St. Paul continues to be treated differently than other dealers and that will, inevitably, strain the relationship between HDMC and its dealers.

Further, the Policies are designed to remedy certain adverse effects that HDMC has experienced. The Policies are intended to increase consistency with HDMC's policies regarding the sale of motorcycles by its nationwide network of dealers, to increase the focus of HDMC's dealers on their primary responsibilities to customers within geographically assigned territories, to protect and prevent dilution of HDMC's trademark rights and brand reputation, to remedy the competitive disadvantage that HDMC's international dealers experience in the absence of the Policies, and to guard against potentially unsafe and unlawful conditions in foreign countries where products are being sold by U.S. dealers. (Kennedy Decl. ¶¶ 10, 12-13, 15, 22-24) In order to be effective, however, the Policies must be applied to all of HDMC's U.S. dealers, not all but one of them.

Accordingly, HDMC's pursuit of a declaratory judgment on the enforceability of the Policies is an affirmative action that HDMC deemed necessary to make key business decisions that have important ramifications, and is not the kind of "preemptive strike" suit that may provide a compelling circumstance to depart from the first-filed rule. *See Northwest Airlines*, 989 F.2d at 1007.

16

In short, the first-filed rule applies because HDMC, filing first, "neither acted in bad faith nor raced to the courthouse to preempt a suit" by St. Paul.  *Id.* Avoiding duplicative efforts and the waste of judicial resources requires application of the first-filed rule here, and no compelling circumstances suggest a different result.  *Id.*; *see also Slidell*, 2003 U.S. Dist. LEXIS 15310 at *10.  Accordingly, because HDMC's complaint was filed first, St. Paul's complaint should be dismissed, or the action should be transferred to the Eastern District of Wisconsin.  *See id.* at *13-14.

### III.   <u>Alternatively, This Action Should be Transferred to the Eastern District of Wisconsin Pursuant to 28 U.S.C. § 1404(a).</u>

As demonstrated above, the first-filed rule demands dismissal or transfer of this case, and this Court (like the *Slidell* court) need not even consider HDMC's alternative motion for transfer pursuant to 28 U.S.C. § 1404(a).  *See Slidell*, 2003 U.S. Dist. LEXIS 15310 at *15.  However, transfer to the Eastern District of Wisconsin is warranted on those grounds as well.  As this Court has aptly noted, although "[c]ourts have sometimes developed elaborate, multi-factor tests in considering § 1404(a) motions, … the analysis always centers on the three factors that are mentioned in the text of the statute: the convenience of the parties, the convenience of the witnesses, and the interests of justice.  *Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000, 1004 (D. Minn. 2006).

#### A.   **Convenience of the Parties.**

In balancing the convenience of the parties, the Eighth Circuit assesses the convenience to the parties generally, the accessibility of records and documents, the

location where the complained-of conduct occurred, and the applicability of each forum

state's substantive law.  *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F. 3d 688,

696 (8th Cir. 1997).  While some of these considerations may be neutral here, the

remainder indicate that litigating this dispute in the Eastern District of Wisconsin would

be substantially more convenient.

       The conduct that St. Paul complains about — the decisions relating to and

the creation of HDMC's Policies — occurred in Milwaukee, Wisconsin.  (Kennedy Decl.

¶ 29)  The HDMC employees involved in the creation and implementation of the Policies

are located in Milwaukee, and the expenses of travel and lost work time for these

employees would be substantially lessened if the proceedings took place in Milwaukee.

(*Id.*); *see also Nelson v. Soo Line Railroad Co.*, 58 F. Supp. 2d 1023, 1027 (D. Minn.

1999).  While St. Paul is likely to argue that it, too, has employee-witnesses that would be

inconvenienced by attending proceedings in Milwaukee, any such argument is

unconvincing because St. Paul's internet-commerce employees are not needed for a court

to determine the primary issue, which is largely a legal one, of whether the Policies are

valid and enforceable.  While St. Paul's fact witnesses about its internet sales would not

be needed for that purpose, HDMC's management-level witnesses who were involved in

the decision-making on these Policies would be, and it would be substantially more

convenient for those employees to participate in proceedings in Milwaukee.

       Furthermore, St. Paul obviously did not view Wisconsin as an inconvenient

forum when it filed an administrative complaint against HDMC in Wisconsin in March

2011.  (*See* Kramer Decl. Ex A)  It would be disingenuous for St. Paul to argue now that

it views Wisconsin as an inconvenient forum, when St. Paul plainly found it to be not only convenient, but a preferable place to pursue relief, just eight months ago.

**B.      Convenience of the Witnesses.**

In assessing this factor, the convenience to <u>non-party</u> witnesses, their location, and the preference for courts to have live testimony rather than deposition testimony are the focal points of the inquiry.  *Nelson*, 58 F. Supp. 2d at 1027.  With respect to St. Paul's claims, the dealer-operator of St. Paul identified in his sworn affidavit two third-party witnesses who are former employees of HDMC.  (Giannetti Aff. ¶¶ 10, 16)  To the best of HDMC's knowledge, one of these individuals is still located in and around the Milwaukee area and the other is in Michigan.  (Kennedy Decl. ¶ 30)  The convenience to these non-party witnesses, identified by St. Paul itself, weighs strongly in favor of transferring this case to the Eastern District of Wisconsin, since that venue would be more convenient for those individuals.  In addition, neither is subject to the subpoena power of this Court, but one of them is subject to subpoena in Wisconsin, which would also ensure his live testimony at court proceedings.  *See Nelson*, 58 F. Supp. 2d at 1027.

**C.      Interests of Justice.**

Finally, under the interests-of-justice factor, courts typically consider factors such as judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, and the advantages of having a local court

determine questions of local law.  *Terra*, 119 F.3d at 696.  On balance, these interests-of-justice factors favor transferring this case.

First, as demonstrated above with regard to the first-filed rule, judicial economy favors resolution of the parties' dispute in the Eastern District of Wisconsin, where HDMC filed its complaint before St. Paul filed its complaint.

Second, while a plaintiff's choice of forum is often given deference, significantly less deference is afforded that choice when, as here, the transaction or underlying facts at issue occurred somewhere other than the chosen forum.  *Nelson*, 58 F. Supp. 2d at 1026.  And, when the first-filed rule is also part of the transfer calculus, it makes little sense to give the second-filing plaintiff's (St. Paul's) choice of forum any more preference than the first-filing plaintiff's (HDMC's) choice.  Indeed, under the first-filed rule, the opposite preference is required. *See Northwest Airlines*, 989 F. 2d at 1005 (stating the well-established rule that priority is given to the jurisdiction in which a case is filed first).

Finally, Wisconsin law applies to the construction of the dealer agreement entered into between HDMC and St. Paul.  (Giannetti Aff., Ex. A., General Conditions, § P(10))  Therefore, there is an interest in having a court in Wisconsin determine the issues of contract interpretation that are governed by Wisconsin law.

### D.    At Most, the Section 1404(a) Factors are Neutral, in Which Case the First-Filed Rule Should More Heavily Favor Transfer.

As indicated above, each of the three considerations assessed under a Section 1404(a) analysis favor transfer of this case to the Eastern District of Wisconsin.

However, even if the Court determines that the Section 1404(a) considerations are

neutral,[4] such a determination would make adherence to the first-filed rule even more

compelling.  An analogous situation was presented to this Court in the *Schoemann* case.

In that case, the Court found that the convenience considerations and the interests of

justice did not weigh heavily either for or against transfer of the case, but a forum-

selection clause in the parties' agreement became the deciding factor in leading the Court

to transfer the case to another district court.  *Schoemann*, 447 F. Supp. 2d at 1005, 1007.

Just as the forum-selection clause in *Schoemann* gave priority to the moving party's

choice of forum in that case, so also the first-filed rule gives priority to HDMC's choice

of forum in this case.  *See Northwest Airlines*, 989 F. 2d at 1005.  Accordingly, even if

the Section 1404(a) factors are determined in this case to be "a wash," the first-filed rule

and the priority that the rule gives to HDMC's first-filed proceedings should be

"decisive" in transferring this case to the Eastern District of Wisconsin.  *See Schoemann*,

447 F. Supp. 2d at 1007.

## Conclusion

This case should be dismissed for lack of subject matter jurisdiction since

St. Paul's claims for purported damages and injunctive relief are not ripe for adjudication.

In the alternative, there are no compelling circumstances present in this case such that the

---

[4] Indeed, the Section 1404(a) factors could, at most, be considered neutral because, with the operative events and witnesses located in or around Milwaukee, St. Paul cannot plausibly argue that it is substantially more convenient to litigate this matter in Minnesota.

Court should depart from the rule of fairness and comity that a dispute, when cases regarding substantially the same issues between the same parties are filed in two different jurisdictions, should be adjudged in the jurisdiction where the case was filed first. Moreover, convenience of the parties and witnesses and the interests of justice also favor adjudication of the dispute between HDMC and St. Paul in the Eastern District of Wisconsin. This case should be dismissed or transferred to permit the proceedings to move forward solely in the Eastern District of Wisconsin without the risk of duplicative judicial efforts or inconsistent rulings.

Dated:  November 10, 2011                              Respectfully submitted,


                                                       /s Daniel A. Haws _____
                                                       Daniel A. Haws, MN #193501
                                                       MURNANE BRANDT
                                                       30 East Seventh Street, Suite 3200
                                                       St. Paul, MN 55101
                                                       651.227.9411 (telephone)

                                                       *Attorneys for Defendant Harley-Davidson
                                                       Motor Company, Inc.*

Roberta F. Howell, Wis. Bar No. 1000275
    *(pro hac vice application pending)*
Jodi L. Newman, Wis. Bar No. 1083773
    *(pro hac vice application pending)*
FOLEY & LARDNER LLP
150 East Gilman Street
P.O. Box 1497
Madison, WI 53701-1497
608.257.5035 (phone)
608.258.4258 (facsimile)
rhowell@foley.com
jknewman@foley.com

Adam E. Crawford, Wis. Bar No. 1056803
    *(pro hac vice application pending)*
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
414.271.2400 (phone)
414.297.4900 (facsimile)
aecrawford@foley.com

Daniel A. Haws, MN #193501
MURNANE BRANDT
30 East Seventh Street, Suite 3200
St. Paul, MN 55101
651.227.9411 (telephone)
651.223.5199 (facsimile)
dhaws@murnane.com

1340966